A02A1943. BOYD v. THE STATE.
(578 SE2d 472)

PHIPPS, Judge.

Gary Lynn Boyd appeals his conviction after a bench trial of driving under the influence of alcohol (DUI) to the extent that it was less safe for him to drive. He contends that there was insufficient evidence to establish probable cause for his arrest for DUI, that statements that he made while under arrest should have been excluded, and that there was insufficient evidence to support the conviction. Because the record does not support Boyd's contentions, we affirm.

At trial, a police officer testified that at approximately 2:50 a.m. on October 16, 1997, he observed Boyd drive into a parking lot at a "high rate of speed," "scrub" a curb, abruptly make a loop, and then head back toward the entrance. The officer followed Boyd. Boyd ran a stop sign in the parking lot as he continued at a "reckless speed" until the officer turned on the blue lights, which also activated the patrol car's videocamera. Boyd stopped in a nearby parking lot.

The officer was assigned to a DUI task force. Upon approaching Boyd, the officer noted that Boyd had bloodshot eyes, a blank, dazed, fixed stare on his face, saliva drooling from his chin, and a strong odor of alcohol on his breath. When the officer asked Boyd for his license and proof of insurance, Boyd was initially unresponsive. He

---

[15] See *Woodward*, supra.
[16] (Citation and punctuation omitted.) Id. at 331.

fumbled past his driver's license twice before recognizing it. Boyd's speech was slurred. He denied drinking any alcohol and striking the curb. The officer asked Boyd to step out of the car to inspect his tires, but when the officer told Boyd that he was not under arrest, Boyd refused to comply with the request. The officer then radioed for assistance.

The responding officer, who had almost five years experience with the DUI task force, testified at Boyd's trial. Upon arriving at the scene, he activated his videocamera. As the first officer began briefing him on his observations, Boyd interposed that he had not hit a curb and had not driven too fast. The responding officer noticed Boyd's slurred speech, his bloodshot eyes, and an "overpowering" odor of an alcoholic beverage as Boyd spoke. When Boyd denied that he had consumed alcohol, the officer asked Boyd whether he had been around anything that contained alcohol. Boyd responded, "I don't know. What is alcohol?"

By this time, both officers had formed the opinion that Boyd had been driving under the influence of alcohol. Boyd, who had become argumentative, was arrested for driving under the influence of alcohol and was ordered to step out of the car. But he refused to comply. As the officers pulled him out of the car, Boyd resisted by holding onto the car's center console. Once outside the car, Boyd would not stand and instead landed on his knees. He was handcuffed and placed in the rear seat of a patrol car, where he remained while the police completed their investigation.

Boyd began to complain to one of the officers that the handcuffs were uncomfortable and that his shoulders, on which he had previously had surgery, were hurting. He voiced suspicion that the officers were trying to confiscate his car. He then repeatedly referred to the officer with opprobrious language and made derogatory statements to the officer about his appearance, stating, "I'm just voicing my opinion." The officer did not respond. Both videotapes made by the officers were introduced into evidence.

1. Boyd contends that the officers lacked probable cause to arrest him for DUI. The material inquiry is whether the facts within the officers' knowledge at the time of the arrest constituted reasonably trustworthy information sufficient to authorize a prudent person to believe that Boyd had committed that offense.[1] "The test of probable cause requires merely a probability — less than a certainty but more than a mere suspicion or possibility."[2] Here, one of the officers observed Boyd drive erratically through a parking lot, and both

---

[1] See *Whitener v. State*, 201 Ga. App. 309, 310 (1) (410 SE2d 796) (1991).

[2] (Citation and punctuation omitted.) *Firsanov v. State*, 270 Ga. 873, 875 (3) (513 SE2d 184) (1999).

officers noticed Boyd's bloodshot eyes, slurred speech, and an odor of alcohol on his breath. These observations provided probable cause to arrest Boyd for DUI.[3]

2. Boyd contends that the trial court erred in admitting statements he made after his arrest because he had not been advised of his *Miranda* rights. However, the record shows that Boyd's statements did not result from any in-custody interrogation, as they must to invoke *Miranda v. Arizona*.[4] Moreover, defense counsel stipulated that the officer to whom Boyd directed his statements was not "egging him on with questions" or trying to "goad him into talking" and that, in fact, Boyd's complaints had deteriorated into a personal attack as he tried to "get a rise out of [the officer]." Thus, this contention is without merit.

3. Boyd contends that the evidence was insufficient to support his DUI conviction.

> An appellate court does not weigh the evidence or determine witness credibility but only determines that the evidence to convict is sufficient under the standard of *Jackson v. Virginia*, [443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)]. Conflicting testimony is a matter of credibility for the finder of fact to resolve. As long as some competent evidence exists, even though contradicted, to support each fact necessary to make out the State's case, we will uphold the factfinder's verdict. [Cit.][5]

It is unlawful for a person to drive a car while under the influence of alcohol to the degree that it is less safe for that person to drive.[6] The evidence as set forth above, along with the officers' testimony that, based upon their observations, police training, and experience, Boyd was a less safe driver as a result of being under the influence of alcohol, was sufficient to allow a rational trier of fact to conclude that Boyd was guilty beyond a reasonable doubt of DUI.[7]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

---

[3] See *Singleterry v. State*, 227 Ga. App. 155 (1) (489 SE2d 42) (1997); *State v. Greene*, 178 Ga. App. 875 (1) (344 SE2d 771) (1986).

[4] 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966); see *Selman v. State*, 267 Ga. 198, 200 (2) (475 SE2d 892) (1996); *McClendon v. State*, 201 Ga. App. 262, 264 (1) (b) (410 SE2d 760) (1991).

[5] *Childress v. State*, 251 Ga. App. 873, 876 (2) (554 SE2d 818) (2001).

[6] OCGA § 40-6-391 (a) (1); *Kelly v. State*, 242 Ga. App. 30, 31 (1) (528 SE2d 812) (2000).

[7] See *Childress*, supra; *Blackwell v. State*, 180 Ga. App. 253, 254-255 (2) (349 SE2d 13) (1986); *Cadden v. State*, 176 Ga. App. 377, 378 (2) (336 SE2d 266) (1985).

DECIDED FEBRUARY 6, 2003 —
RECONSIDERATION DENIED FEBRUARY 26, 2003.

*Head, Thomas, Webb & Willis, William C. Head*, for appellant.
*Barry E. Morgan, Solicitor-General, William R. Pardue, Assistant Solicitor-General*, for appellee.