## A08A1808. THOMAS v. THE STATE.
(668 SE2d 540)

ELLINGTON, Judge.

Following a bench trial, the State Court of Henry County found Matthew Thomas guilty of driving while under the influence of alcohol to the extent it was less safe to drive, OCGA § 40-6-391 (a) (1); failure to maintain a lane, OCGA § 40-6-48; and improper passing on the right, OCGA § 40-6-43 (b). Thomas appeals, contending that the trial court erred in denying his motion to suppress. Finding no error, we affirm.

> Because the trial court sits as the trier of fact when ruling on a motion to suppress or a motion in limine, its findings based upon conflicting evidence are analogous to a jury verdict and should not be disturbed by a reviewing court if there is any evidence to support them. When we review a trial court's decision on such motions to exclude evidence, we construe the evidence most favorably to uphold the findings and judgment, and we adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous.

(Citations omitted.) *State v. Tousley*, 271 Ga. App. 874 (611 SE2d 139) (2005). Viewed in the light most favorable to the trial court's findings, the record shows the following facts.

At approximately 11:30 p.m. on December 14, 2007, a police officer with the City of Hampton Police Department observed a pickup truck ahead of him, weaving back and forth between the lanes and crossing the fog line. Because the officer was already transporting a suspect in his patrol car, he did not want to initiate a traffic stop, so he attempted to call a dispatcher to report the truck, but his radio did not transmit properly. While he kept trying to alert the dispatcher, the officer suddenly saw the truck "slow[ ] way down . . . well below the speed limit," and the officer drove past the truck. Another motorist approached the officer from behind and flashed his headlights to get the officer's attention. The officer stopped on the left side of the road and turned on his emergency lights, and the motorist told him that he had seen the pickup truck swerving and was concerned that the driver would kill someone. While they were talking, the pickup truck sped by on the right-hand shoulder of the road. The officer followed the truck and saw it swerving between lanes. The officer was able to reach a dispatcher, who advised him that a county officer was on the way.

The officer following the truck saw the driver make a wide, looping right turn at an intersection, and he decided to initiate a traffic stop. When he approached the truck, he noticed a very strong odor of alcohol coming from the driver, Thomas. The officer asked Thomas to turn off the truck, step out of the vehicle, hand over his keys and license, and walk to the back of the truck to wait for the Henry County police officer to arrive. As Thomas walked, he had to support himself by holding onto the sides of the truck. While they waited, the officer and Thomas talked; the officer did not handcuff Thomas or place him in the patrol car.

Shortly thereafter, a Hampton police officer and a Henry County officer arrived; the city officer took the other suspect to jail while the officer who had stopped Thomas told the county officer what had happened. The county officer then took over the investigation, talking with Thomas and conducting field sobriety tests before determining that Thomas was under the influence of alcohol to the extent that it was less safe for him to drive. The county officer placed Thomas under arrest and immediately read him the implied consent warnings. Thomas refused to submit to a breath test.

1. Thomas contends that the court should have granted his motion to suppress the results of his field sobriety tests and other evidence collected by the officers while he was detained, arguing that

he was effectively under arrest during the detention, yet neither officer had advised him of his *Miranda*[1] rights.

"When a violator is placed in custody or under arrest at a traffic stop[,] the protection of *Miranda* arises." (Citation and punctuation omitted.) *Crum v. State*, 194 Ga. App. 271, 272 (390 SE2d 295) (1990). Thus, "if an officer gives a field sobriety test to a person who is [in custody or] under arrest but who had not been warned of his right against self-incrimination, then the test [results are] inadmissible." (Citations omitted.) *Harper v. State*, 243 Ga. App. 705, 705-706 (1) (534 SE2d 157) (2000). Conversely, if the person is not in custody when he takes a field sobriety test, the results are generally admissible even if the person had not been warned of his *Miranda* rights. Id. The test to determine whether a detainee is "in custody" for *Miranda* purposes is

> whether a reasonable person in the detainee's position would have thought the detention would not be temporary. . . . [T]he safeguards prescribed by *Miranda* become applicable only after a detainee's freedom of action is curtailed to a degree associated with formal arrest. The rationale behind the holding is that although an ordinary traffic stop curtails the freedom of action of the detained motorist and imposes some pressures on the detainee to answer questions, such pressures do not sufficiently impair the detainee's exercise of his privilege against self-incrimination so as to require that he be advised of his constitutional rights. The issue of whether one is in custody for *Miranda* purposes is a mixed question of law and fact, and the trial court's determination will not be disturbed unless it is clearly erroneous.

(Citations and punctuation omitted.) *Johnson v. State*, 234 Ga. App. 116, 117-118 (2) (506 SE2d 234) (1998).

In this case, the undisputed evidence showed that the officer who stopped Thomas was transporting another suspect and, therefore, had to wait for assistance from other officers. The officer contacted a dispatcher and asked for assistance before stopping Thomas. Although the officer held onto Thomas' keys and license and Thomas was not able to leave the scene, the officer told Thomas that a Henry County officer was on the way, so it was clear that the initial detention would be temporary and that there would only be a minor delay before the county officer arrived to determine whether

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

Thomas was driving under the influence. The officer did not handcuff Thomas or place him in the patrol car while they waited. Further, both of the officers testified that only a few minutes elapsed between the traffic stop and the arrival of the county officer, although Thomas testified that it seemed like a long time, "probably 40 minutes." Even so, there was no evidence of any unnecessary delay or lack of diligence by the officers.

This Court has previously held that a delay of 50 minutes to an hour between a traffic stop and an investigation did not convert the investigation into a custodial situation. *Harper v. State*, 243 Ga. App. at 706 (1) (delay of up to an hour); *Aldridge v. State*, 237 Ga. App. 209, 213 (3) (515 SE2d 397) (1999) (delay of 45 to 50 minutes). Moreover, even though Thomas was not free to leave the scene following the stop, he was not handcuffed or otherwise restrained. See *Tune v. State*, 286 Ga. App. 32, 35 (1) (b) (648 SE2d 423) (2007) (finding that a temporary detention under similar circumstances did not constitute an arrest for the purposes of *Miranda* warnings); *Harper v. State*, 243 Ga. App. at 706 (1) (noting that "not every detention is an arrest") (citation omitted).

We conclude that, under the circumstances presented, "a reasonable person could conclude that his freedom of action was only temporarily curtailed and that a final determination of his status was simply delayed." *Harper v. State*, 243 Ga. App. at 706 (1). Thus, the trial court's finding that the officer did not place Thomas under arrest until after conducting the field sobriety tests is not clearly erroneous, and the court did not err in denying Thomas' motion to suppress on this basis.

2. Thomas argues that the court should have granted his motion to suppress evidence of his intoxication and his refusal to submit to a breath test because the officers did not give his implied consent warning in a timely manner. This argument lacks merit.

> OCGA § 40-6-392 (a) (4) provides, in part, that the arresting officer at the time of arrest shall advise the person arrested of his rights to a chemical test or tests according to this Code section. . . . [This statute requires] exclusion of the results of a State-administered chemical test where the notice was not given at the time of arrest, or at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant.

(Citation, punctuation and footnote omitted.) *Dunbar v. State*, 283 Ga. App. 872, 874 (2) (643 SE2d 292) (2007). In this case, the county officer testified that he gave Thomas the implied consent warning immediately after he placed Thomas under arrest. Thus, the court

properly found that the notice was timely, and it did not err in denying Thomas' motion to suppress on this basis.

3. Based upon our rulings in Divisions 1 and 2, Thomas' remaining alleged error is moot.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED OCTOBER 17, 2008.

*Brent D. Hutchison*, for appellant.
*Charles A. Spahos, Solicitor-General*, for appellee.