## A99A1578. TAYLOR v. THE STATE.
(522 SE2d 266)

ELLINGTON, Judge.

Donna Taylor was convicted after a bench trial of trafficking in methamphetamine, OCGA § 16-13-31 (e), and of several other drug, traffic, and firearms charges. Taylor appeals from the judgment of conviction, contending the trial court erred in denying her motion to suppress evidence seized from her person at the jail. Because the search was lawful, we affirm.

On appeal from a motion to suppress, the evidence is viewed in a light most favorable to upholding the trial court's judgment. The credibility of witnesses and the weight accorded their testimony "rest with the trier of fact, who is under no obligation to believe a witness, even in the absence of contradictory testimony." (Citation and punctuation omitted.) *Anderson v. State*, 267 Ga. 116, 118 (2) (475 SE2d 629) (1996). Viewed in this light, the record reveals the following:

On February 10, 1996, after conducting surveillance, investigators with the Gordon County Sheriff's Office stopped Donna Taylor as she drove away from the residence of a reliable confidential informant ("CI"). Based on the earlier surveillance and information obtained moments before the arrest during a telephone conversation with the CI, the investigators believed Taylor was then in possession of at least an ounce of methamphetamine. The CI told the investigators that Taylor had the drugs "down in her pants, not in her pants pocket." Moreover, the CI reported that before Taylor left the residence, she prepared a sample of the drug for his use, leaving a mixture of methamphetamine and water in a syringe. During a consent search of Taylor's truck, the investigators found electronic scales, a facial compact containing a white powdery substance, two spoons, T-shirts bearing the acronym "S.L.U.T.," which stands for "Stop Legalized Urine Testing," and a concealed .25 caliber pistol. Taylor was placed under arrest for possessing the pistol and transported to the Gordon County Jail.

When Taylor was booked into the jail, a female dispatcher employed by the Sheriff's Office searched Taylor pursuant to instructions from one of the investigators and in accordance with jail policy. In a private room, the dispatcher asked Taylor to disrobe. As Taylor complied, the dispatcher noticed a large bulge in Taylor's underwear. The dispatcher retrieved from Taylor's underwear a paper towel-wrapped package containing 57.4 grams of methamphetamine. Taylor testified that the dispatcher forcibly recovered the methamphetamine during a body cavity search. Upon finding the methamphetamine, the investigators sought and obtained a warrant to take samples of Taylor's blood and urine to test for the presence of drugs. The test results were positive for methamphetamine and diazepam.

Taylor argues that the methamphetamine evidence should be suppressed because it was obtained following an illegal body cavity search. Moreover, she argues that her blood and urine test results should be suppressed because the warrant which authorized taking the test samples was based upon and tainted by the earlier seizure of methamphetamine. We do not agree.

To entertain Taylor's argument that she was subjected to an illegal body cavity search, we must conclude the court found that such a search occurred. The trial court, however, in findings issued from the bench, specifically credited the testimony of the employee who searched Taylor. The court found that Taylor was strip-searched by a female jail employee who "in plain view . . . observed a bulge under [Taylor's] clothes." The court did not believe Taylor's testimony that she was subjected to a more invasive body cavity search, and we are bound by that finding. See, e.g., *Anderson v. State*, 267 Ga. at 118 (2).

1. Taylor's strip search was lawful for two reasons:

(a) Taylor was arrested for illegally possessing a firearm, a serious criminal offense. She does not contest the legality of that arrest. Once a defendant has been placed under custodial arrest, police may conduct a search of his or her person. *United States v. Robinson*, 414 U. S. 218, 235 (94 SC 467, 38 LE2d 427) (1973); *Eberhart v. State*, 257 Ga. 600, 602 (2) (361 SE2d 821) (1987); *Causey v. State*, 208 Ga. App. 389, 390 (3) (430 SE2d 594) (1993). "It is also plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention." *United States v. Edwards*, 415 U. S. 800, 803 (94 SC 1234, 39 LE2d 771) (1974). However, although the scope of a custodial search is broad and is premised solely upon the legality of the arrest and not upon a showing of probable cause that weapons or contraband would be found, *United States v. Robinson*, 414 U. S. at 235, searches which involve the inspection of or intrusion into the body will be closely scrutinized to see that they comport with due process. *United States v. Edwards*, 415 U. S. at 808, n. 9; *Rochin v. California*, 342 U. S. 165, 172-174 (72 SC 205, 96 LE 183) (1952). Whether the scope of that personal search is valid depends, generally, upon the reasonableness of the search in light of its purpose. See *Holtzendorf v. State*, 125 Ga. App. 747, 749 (188 SE2d 879) (1972).

Based upon the evidence then available, the investigators reasonably believed that Taylor had a large quantity of methamphetamine concealed in her pants, contraband she could discard or destroy at the first available opportunity. Police are authorized to use reasonable measures to prevent the destruction or concealment of evidence. See *Merriweather v. State*, 228 Ga. App. 246, 248 (3) (491 SE2d 467) (1997). Because the methamphetamine was hidden in Taylor's pants, a search of her clothing and a visual inspection of her body were nec-

essary. Consequently, the investigators took Taylor to the jail where she could be searched by a female jail employee in relative privacy. The strip search was conducted in a reasonable manner without abuse or intrusion into the body; therefore, we find it did not violate Taylor's Fourth Amendment rights. See *United States v. Robinson*, 414 U. S. at 235; *United States v. Klein*, 522 F2d 296, 300 (1st Cir. 1975); *Swain v. Spinney*, 932 FSupp. 25, 27 (2) (D. Mass. 1996).

(b) Taylor was strip-searched as part of an inventory search incident to her admission into the prison population. The United States Supreme Court has held that pre-trial detainees may be subjected to strip searches and "visual body cavity inspections" on less than probable cause when, applying a balancing test, the need for the particular search outweighs the detainee's privacy interest and the search is conducted in a reasonable place and manner. *Bell v. Wolfish*, 441 U. S. 520, 559-560 (III) (D) (99 SC 1861, 60 LE2d 447) (1979); see also *United States v. Edwards*, 415 U. S. at 802-804, n. 6; *Scott v. State*, 216 Ga. App. 692, 696 (5) (455 SE2d 609) (1995). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U. S. at 559.

The trial court found that Taylor's search was conducted in a private room by a female jail employee. We find no case or statutory law that requires the female who searched Taylor to be a certified police officer. The search was performed at the direction of a police officer who had reason to believe that Taylor had contraband hidden beneath her clothes. The search was conducted in a reasonable manner, and it did serve the legitimate purposes of preserving evidence of crime and of keeping contraband from the prison population. The search was proper. See *Bell v. Wolfish*, 441 U. S. at 559-560; *Swain v. Spinney*, 932 FSupp. at 27-28.

2. Because the strip search was lawful, it did not taint the subsequent warranted search and seizure of Taylor's blood and urine samples. See *State v. Wright*, 204 Ga. App. 382, 383 (2) (419 SE2d 334) (1992). The trial court did not err in denying Taylor's motion to suppress.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED SEPTEMBER 8, 1999.

*Adam & Talley, Jeffery C. Talley, J. Lane Bearden*, for appellant.
*T. Joseph Campbell, District Attorney, Sharon M. Fox, Assistant District Attorney*, for appellee.